## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF NEW YORK

JOSEPH WOODS,

                                Plaintiff,

       v.                                     9:21-CV-662
                                              (GTS/ATB)

RYAN CHADWICK, et al.,

                                Defendants.

JOSEPH WOODS, Plaintiff, pro se
RACHEL OUIMET, Asst. Attorney General for Defendants

ANDREW T. BAXTER, United States Magistrate Judge

### REPORT-RECOMMENDATION

       This matter has been referred to me for Report and Recommendation by United States District Judge Glenn T. Suddaby, pursuant to 28 U.S.C. § 636(b) and Local Rule N.D.N.Y. 72.3(c).  In this civil rights action, plaintiff alleged various constitutional violations that occurred while he was incarcerated at Washington Correctional Facility ("Washington C.F."), in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS").  Plaintiff filed his complaint on June 7, 2021.  (Dkt. No. 1, Complaint ("Compl.")).  On July 19, 2021, upon initial review of the complaint, Judge Suddaby ruled that only plaintiff's First Amendment retaliation claim against defendants Chadwick and Terrio, could proceed.  (Dkt. No. 7 at 16-17).

       Presently before the court is defendants' motion for summary judgment pursuant to Fed. R. Civ. P. 56 seeking dismissal of the sole surviving claim in the complaint.  (Dkt. No. 25).  Plaintiff responded in opposition to the motion on May 26, 2022.  (Dkt.

No. 27). For the reasons set forth below, the court recommends granting defendants' motion for summary judgment and dismissing the remaining claim in plaintiff's complaint.

## I.    <u>Summary Judgment</u>

Summary judgment is appropriate where there exists no genuine issue of material fact and, based on the undisputed facts, the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Salahuddin v. Goord*, 467 F.3d 263, 272-73 (2d Cir. 2006). "Only disputes over ['material'] facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). It must be apparent that no rational finder of fact could find in favor of the non-moving party for a court to grant a motion for summary judgment. *Gallo v. Prudential Residential Servs.*, 22 F.3d 1219, 1224 (2d Cir. 1994).

The moving party has the burden to show the absence of disputed material facts by informing the court of portions of pleadings, depositions, and affidavits which support the motion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party satisfies its burden, the nonmoving party must move forward with specific facts showing that there is a genuine issue for trial. *Salahuddin v. Goord*, 467 F.3d at 273. In that context, the nonmoving party must do more than "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In determining whether there is a

genuine issue of material fact, a court must resolve all ambiguities, and draw all inferences, against the movant. *See United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962); *Salahuddin*, 467 F.3d at 272.

## II.    **Factual Contentions**

Plaintiff was transferred to Washington C.F. in August of 2019 and subsequently joined the Incarcerated Liaison Committee ("ILC") as a dorm representative. (Dkt. No. 27-2, Plaintiff's Memorandum of Law ("Pl.'s Mem.") at 2). Although he was appointed to the secretary executive position, plaintiff alleges that all of the executive positions were used interchangeably at Washington C.F. (*Id.*). Defendant Ryan Chadwick was the ILC staff advisor during all times relevant to the complaint. (Dkt. No. 25-3, Chadwick Decl. ¶ 3). Defendant Todd Terrio was Chadwick's supervisor. (Dkt. No. 25-4, Terrio Decl. ¶ 2).

According to Washington C.F. internal policy, all proposed ILC agendas must be signed by the ILC chairman, and then submitted to the ILC staff advisor for approval and signature before submission to the administration. (Terrio Decl. ¶¶ 8-9; Dkt. No. 25-2, Defs.' Statement of Material Facts ("SOMF") ¶ 9). This policy was instituted to eliminate safety and security concerns[1]. (Terrio Decl. ¶¶ 9-11). Plaintiff asserted that he had never seen such a written policy. (Pl.'s Reply to Defs.' SOMF ¶ 17, Dkt. No. 27 at 3). However, during his deposition, he acknowledged that, pursuant to the constitution and bylaws governing the ILC, ILC members are required to circulate proposed agenda to the staff advisor and not send them directly to the administration.

---

[1] The policy was instituted after a prior ILC dorm representative submitted, directly to the administration, an ILC agenda that contained threats to a staff member. (Terrio Decl. ¶ 10).

(Pl.'s Dep. at 91, Dkt. No. 25-6 at 94).   Plaintiff also acknowledged that the procedure relating to ILC agenda required that they be approved by staff advisor Chadwick before being circulated to the administration.  (Pl.'s Dep. at 105, 114).

In or around November of 2020, staff advisor Chadwick alleges that he and supervisor Terrio met with plaintiff regarding an unapproved ILC agenda that plaintiff attempted to send directly to the administration.  (Chadwick Decl. ¶ 9).  During the meeting, Chadwick and Terrio advised plaintiff that he was prohibited from submitting any proposed ILC agendas directly to the facility administrative staff.  (*Id.*).  Plaintiff has acknowledged defendant Chadwick's deposition testimony with respect to this meeting and did not contradict it.  (Pl.'s Reply to Defs.' SOMF ¶ 15, Dkt. No. 27 at 3) ("[I]n or around October or November of 2020, Mr. Chadwick and Mr. Terrio counseled Plaintiff, after they were notified by administration that Plaintiff attempted to submit an agenda to the Superintendent. . . .  Mr. Chadwick also testified that he told plaintiff to stop writing to the Superintendent.")

Sometime in January 2021, there was an informal meeting between Chadwick, plaintiff, and another inmate in the recreation office, where a discussion about proposed ILC agenda items occurred.  (Pl.'s Mem. at 3).  Plaintiff typed up a written agenda per their discussion and, at defendant Chadwick's direction, submitted the agenda to Chadwick.  (Pl.'s Mem. at 3; Chadwick Decl., Ex. E, 2/5/2021 Tier II Hearing Transcript, Dkt. No. 25-3 at 30-31; Pl.'s Dep. at 99-100).  Plaintiff never received a response from Chadwick concerning the proposed ILC agenda.  (Pl.'s Mem. at 3).

On January 24, 2021, because he had no response from defendant Chadwick,

plaintiff sent, directly to multiple members of the administration, an altered version of the ILC agenda that he had previously submitted to defendant Chadwick. (Defs.' SOMF ¶ 13; Pl.'s Dep. at 91-92, 93).[2]  After learning about the unapproved agenda, Chadwick and Terrio met with plaintiff in the recreation office. (Defs.' SOMF ¶¶ 16-17; Terrio Decl. ¶ 18).  During the meeting, Chadwick and Terrio allegedly threatened to issue plaintiff a misbehavior report if he didn't resign from the ILC  (Compl., Dkt. No. 1 at 6).  Plaintiff further alleges that Chadwick and Terrio stated "the administration was tired of [him] writing them about grievances and concerns and that [he] needed to sign off as an ILC rep." (*Id.*).  Plaintiff responded that he has a "duty to bring these prison population issues to the Washington Correctional Facility Administration for consideration[,]" and refused to resign from the ILC. (*Id.*).

On January 30, 2021, plaintiff was issued a misbehavior report, charging him with violating a direct order and improper facility correspondence. (*Id.*; Defs.' SOMF ¶ 20).  On February 1, 2021, plaintiff filed a grievance for the misbehavior report and lack of ILC meetings. (Compl., Dkt. No. 1 at 7).[3]  On February 5, 2021, a Tier II disciplinary hearing was conducted, and plaintiff was found guilty of the disciplinary charges, but the penalties were suspended. (Compl., Dkt. No. 1 at 6).  On February 22,

---

[2] The agenda sent to the administration added additional agenda items not included in the proposed agenda sent to staff advisor Chadwick, including a request for a fundraiser for the Rastafarian and Nation of Islam groups. (Pl.'s Ex. N, Dkt. No. 27-1 at 20, 22).  It also included a request for the addition of the BET, Bravo, and A&E channels to the recreation room televisions. (*Id.*).  This agenda also removed the requests for the purchase of new board games and the reopening of the gym. (*Id.*).

[3] Plaintiff subsequently completed the process to exhaust his administrative remedies regarding his retaliation claim. (Compl., Dkt. No. 1 at 7-8).

2021, plaintiff inquired whether he was still a member of the ILC and defendant Chadwick advised him that, "per the Superintendent, Plaintiff was no longer a member of the ILC due to his receipt of a Tier II misbehavior report." (Defs.' SOMF ¶¶ 27-28). The only other sanction imposed on plaintiff was a reprimand. (Pl.'s Mem. at 12).

## DISCUSSION

### III.  Retaliation

#### A.  Legal Standards

To state a First Amendment claim of retaliation, an inmate must allege facts plausibly suggesting that (1) the speech or conduct at issue was protected, (2) the defendant took adverse action against the plaintiff, and (3) there was a causal connection between the protected conduct and the adverse action. *Holland v. Goord*, 758 F.3d 215, 225 (2d Cir. 2014) (citations omitted). "Regardless of the presence of retaliatory motive, . . . a defendant may be entitled to summary judgment if he can show . . . that even without the improper motivation the alleged retaliatory action would have occurred." *Scott v. Coughlin*, 344 F.3d 282, 287-88 (2d Cir. 2003) (citing *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

The court must keep in mind that claims of retaliation are "easily fabricated" and "pose a substantial risk of unwarranted judicial intrusion into matters of general prison administration." *Faulk v. Fisher*, 545 F. App'x 56, 58 (2d Cir. 2013) (quoting *Bennett v. Goord*, 343 F.3d 133, 137 (2d Cir. 2003)). In other words, we must examine prisoners' claims of retaliation with "skepticism and particular care." *Rivera v. Goord*, 119 F. Supp. 2d 327, 339 (S.D.N.Y. 2000) (quoting *Colon v. Coughlin*, 58 F.3d 865,

872 (2d Cir. 1995), *abrogated on other grounds*, *Tangreti v. Bachmann*, 983 F.3d 609 (2d Cir. 2020)). Accordingly, a First Amendment retaliation claim must be supported by "specific and detailed factual allegations," and not stated in "wholly conclusory terms." *Dolan v. Connolly*, 794 F.3d 290, 295 (2d. Cir. 2015) (quoting *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983), *overruled on other grounds*, *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002)).

## B.    Analysis

Plaintiff contends that Chadwick and Terrio violated his First Amendment Rights by retaliating against him for "petition[ing] the government for redress of prison population grievances" through his submission of an ILC agenda directly to the administration. (Pl.'s Mem. at 6). Specifically, plaintiff claims that the defendants retaliated against him by filing a misbehavior report that caused him to be removed from the ILC dorm representative position for at least six months. (Compl., Dkt. No. 1 at 8; Chadwick Decl., Ex. G., Dkt. No. 25-3 at 53; Pl.'s Mem. at 4).[4] This court considers whether plaintiff has raised a question of material fact with respect to the elements of his retaliation claim.

First, the court must decide if plaintiff's conduct was constitutionally protected. Plaintiff argues the submission of an ILC agenda is analogous to the filing of a grievance because the ILC agenda essentially functions as a list of grievances from the prison population as a whole. (Pl.'s Mem. at 10). In *Webster v. Fischer*, the Second

---

[4] Plaintiff alleges that he has "never had any serious disciplinary (action) while in DOCCS care, custody, and control[,]" and the defendants have not offered any evidence to the contrary. (Pl.'s Mem. at 11).

Circuit affirmed "the right[s] of an I.L.C. member to voice criticisms regarding prison conditions." *Webster v. Fischer*, 694 F. Supp. 2d 163, 183 (N.D.N.Y. 2010), *aff'd*, 398 F. App'x 683 (2d Cir. 2010)*.*  Similarly, in *Shaheen v. Filion*, the court held the "writing of articles critical of prison officials and his complaints to prison officials in his capacity as the chairman of the I.L.C. were clearly assertions of his constitutional rights protected by the First Amendment." *Shaheen v. Filion*, No. 9:04-CV-625 (FJS/DRH), 2006 WL 2792739, at *3 (N.D.N.Y. Sept. 17, 2006) (citing *Simmat v. Manson*, 535 F. Supp. 1115, 1117-18 (D. Conn. 1982)).

The defendants do not offer any arguments showing that plaintiff's conduct was not constitutionally protected, or distinguishing this case from *Webster* and *Shaheen*. (Dkt. No. 25-1, Defs.' Mem. at 8).  However, it is clear from the record that plaintiff was not issued a misbehavior report because he voiced issues regarding the facility in an ILC-related meeting or in the proposed agenda that he submitted to defendant Chadwick for approval.  He was sanctioned because, after a prior warning, he violated the required procedures of the ILC by circulating a revised agenda to the facility administration without prior approval of the staff advisor.  This circumstance raises other issues with respect to the viability of plaintiff's retaliation claim on the merits, as well as with respect to qualified immunity, as discussed below.

With respect to the second prong of plaintiff's retaliation claim, an adverse action in the prison context is defined as one that would "deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights." *Davis v. Goord*, 320 F.3d 346, 353 (2d Cir. 2003).  If the action would not deter an individual of

8

ordinary firmness from making a complaint, the retaliatory act is de minimis and outside the realm of constitutional protection. *Id.* (quoting *Dawes v. Walker*, 239 F.3d 489, 493 (2001)).

On January 30, 2021, plaintiff was issued a misbehavior report charging him with violating a direct order and improper facility correspondence. (Chadwick Decl., Ex. D, Dkt. No. 25-3 at 20). The misbehavior report was signed by Chadwick and affirmed by Terrio. (*Id.*). The defendants specifically charged plaintiff with "attempt[ing] to submit a fraudulent agenda that was not approved by anyone . . . ." and "submitt[ing] this non-approved agenda to the administration with a fraudulent self-title of Vice-Chairman . . . ." (*Id.*). On February 5, 2021, after the Tier II hearing, plaintiff was found guilty of both charges. (Chadwick Decl., Ex. E., Dkt. No. 25-3 at 48-49). He was sentenced to "counsel and reprimand, 15 days loss of recreation, packages, and commissary," but the sentence was suspended, and he ultimately received only a counsel and reprimand. (*Id.* at 48; Pl.'s Mem. at 12). Thereafter, Superintendent Tynon removed plaintiff from the ILC, for at least six months, because of the Tier II violation. (Defs.' SOMF ¶ 28; Dkt. No. 27-1 at 36).

The filing of a false misbehavior report that results in some form of more-than-de minimis sanction has been found sufficient to constitute adverse actions. *See, e.g.*, *Reed v. Doe No. 1*, No. 9:11-CV-250 (TJM/DEP), 2012 WL 4486086, at *5 (N.D.N.Y. July 26, 2012) (finding that the "filing of a false misbehavior report can qualify as an adverse action for the purposes of a First Amendment retaliation" where the report resulted in a fourteen-day term in keeplock confinement), *report and recommendation*

9

*adopted*, 2012 WL 4486085 (N.D.N.Y. Sept. 27, 2012); *Tafari v. McCarthy*, 714 F. Supp. 2d 317, 373 (N.D.N.Y. 2010) (finding that a misbehavior report that resulted in SHU confinement constituted an adverse action). However, the mere filing of a misbehavior report alone, without evidence of other repercussions, does not constitute an adverse action. *Bartley v. Collins*, No. 95 Civ. 10161, 2006 WL 1289256, at *7 (S.D.N.Y. May 10, 2006) (finding a misbehavior report that resulted in plaintiff's temporary loss of privileges did not amount to adverse action but a misbehavior report that resulted in keeplock confinement for ten days did). "Typically, courts require a showing of additional punishment above the filing of a misbehavior report to find an adverse action." *Vidal v. Valentin*, No. 16-CV-5745, 2019 WL 3219442, at *8 (S.D.N.Y. July 17, 2019); *see also Flynn v. Ward*, No. 15-CV-1028 (TJM/CFH), 2018 WL 3195095, at *10-11 (N.D.N.Y. June 7, 2018), *report and recommendation adopted*, 2018 WL 3193201 (N.D.N.Y. June 28, 2018).

Plaintiff was found guilty of the disciplinary charges and the facility Superintendent removed plaintiff from the ILC for at least six months, as a result of the Tier II ticket. Because plaintiff's retaliation claim is subject to dismissal on summary judgment for other reasons, the court does not need to address whether this could qualify as an adverse action for the purposes of a retaliation claim.

With respect to the third prong, plaintiff must raise a material question of fact as to the existence of an adequate causal connection between any protected conduct and any subsequent adverse action. However, defendants have established, and defendant has not specifically rebutted, that the misbehavior report was issued based on plaintiff's

10

violation of a facility policy prohibiting him from submitting a proposed agenda directly to the administration.  (Defs.' SOMF ¶¶ 14-20; Chadwick Decl. ¶¶ 9-16, Ex. D).[5]  In his description of the incident in the misbehavior report, Chadwick emphasizes that "[i]nmate Woods is not fit to be an ILC member, as he has proven he is deceptive, fraudulent, and not fit to represent the inmate population."  (Chadwick Decl., Ex. D, Dkt. No. 25-3 at 20).

It is well-settled that, even where plaintiff can make a showing of retaliatory motive, the defendant may be entitled to summary judgment if he can show that the alleged adverse action would have occurred even in the absence of the improper motivation.  *Greer v. Mehiel*, 805 F. App'x 25, 29 (2d Cir. 2020), *cert. denied*, 141 S. Ct. 136 (2020), *reh'g denied*, 141 S. Ct. 217 (2020) (citing *Scott v. Coughlin*, 344 F.3d at 287-88 ("[A] defendant may be entitled to summary judgment if he can show dual motivation, i.e., that even without the improper motivation the alleged retaliatory action would have occurred.") (citing *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. at 287).  The defendant bears the burden of making the showing that he would have taken exactly the same action in the absence of an improper motive.  *Greer*, 805 F. App'x at 29 (citing *Scott*, 344 F.3d at 288).

In this case, although plaintiff alleges that the misbehavior report was issued in retaliation for protected conduct, he acknowledged that he was required, as part of the ILC's rules and procedures, to send the proposed ILC agenda to defendant Chadwick,

_____

[5] Prior to filing the misbehavior report, Chadwick and Terrio gave plaintiff the option to resign from the ILC instead of receiving a misbehavior report.  (Defs.' SOMF ¶¶ 17, 19; Chadwick Decl. ¶ 13; Terrio Decl. ¶ 19).

not directly to the administration. (Pl.'s Dep. at 105). Plaintiff acknowledges that he
sent a proposed agenda directly to the administration in violation of the established
rules and procedures, even if he contends that he "did what [he] felt was right." Thus, it
is clear that plaintiff would have been subjected to discipline for violating the facility
policy and direct order, whether or not the defendants harbored a retaliatory motive.
Because it is beyond dispute that plaintiff's discipline for circulating the proposed ILC
agenda would have been pursued and imposed even in the absence of any retaliatory
motive, summary judgment on his retaliation claim should be granted. *See, e.g.*,
*Stevens v. Duquette*, No. 9:20-CV-853 (BKS/ATB), 2022 WL 2292975, at *8
(N.D.N.Y. Apr. 19, 2022) (plaintiff admitted to refusing to follow a direct order from
C.O. Miller; "[t]hus, defendants have established a non-retaliatory reason for C.O.
Miller's filing of the subject misbehavior report, and dismissal [of the retaliation claim]
is further warranted on this basis"), *report and recommendation adopted*, 2022 WL
2292047 (N.D.N.Y. June 24, 2022); *Logan v. Graham*, No. 9:18-CV-0291 (DNH/ML),
2019 WL 8015209, at *14 (N.D.N.Y. Nov. 26, 2019), *report and recommendation
adopted*, 2020 WL 871197 (N.D.N.Y. Feb. 21, 2020) (defendants established
non-retaliatory reason for the filing of the underlying misbehavior report where plaintiff
admitted to some of the allegations against him) (collecting cases); *Osborn v. Harris*,
No. 9:20-CV-673 (TJM/ATB), 2022 WL 4124423, at *11 (N.D.N.Y. Aug. 2, 2022)
(plaintiff acknowledges that he openly violated the rule against sharing food with other
inmates; thus "[a]ny reasonable fact finder would necessarily conclude, based on the
admissible evidence, that the disciplinary actions against plaintiff would have been

initiated by the other officers regardless of whether anyone harbored some retaliatory intent"), *report and recommendation adopted*, 2022 WL 4120257 (N.D.N.Y. Sept. 9, 2022).

## IV.    <u>Qualified Immunity</u>

Although this court has concluded that plaintiff's retaliation claims should be dismissed on summary judgment on the merits, the court will examine alternative grounds for dismissal based on qualified immunity. For the reasons stated below, this court recommends that the named defendants also be granted summary judgment on qualified immunity grounds.

### A.    **Legal Standards**

The doctrine of qualified immunity generally protects governmental officials from civil liability "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). In determining if a particular right was clearly established, the court "looks to whether (1) it was defined with reasonable clarity, (2) the Supreme Court or the Second Circuit has confirmed the existence of the right, and (3) a reasonable defendant would have understood that his conduct was unlawful." *K.D. ex rel Duncan v. White Plains School Dist.*, No. 11 Civ. 6756, 2013 WL 440556, at *10 (S.D.N.Y. Feb. 5, 2013) (citing *Doninger v. Niehoff*, 642 F.3d 334, 345 (2d Cir. 2011)). The court must ask whether the right at issue was established "'in a particularized sense so that the contours of the right [were] clear to a reasonable

official'" in light of the specific context of the case, "not as a broad general proposition." *Id*. (citing, *inter alia, Reichle v. Howards*, 566 U.S. 658, 665 (2012)).

A case directly on point is not required, and the question is not whether an attorney would learn about the right from researching case law, but whether existing precedent has "placed the statutory or constitutional question beyond debate." *Id*. (citing, *inter alia, Fabrikant v. French*, 691 F.3d 193, 213 (2d Cir. 2012)).  Only Supreme Court and Second Circuit precedent, existing at the time of the alleged violation, are relevant in deciding whether the right is well established.  *Moore v. Vega*, 371 F.3d 110, 114 (2d Cir. 2004).

A government actor is entitled to qualified immunity from Section 1983 suits "if either '(a) the defendant's action did not violate clearly established law, or (b) it was objectively reasonable for the defendant to believe that his action did not violate such law.'" *Johnson v. Newburgh Enlarged Sch. Dist.*, 239 F.3d 246, 250 (2d Cir. 2001) (citing *Salim v. Proulx*, 93 F.3d 86, 89 (2d Cir.1996)).  Thus, even if the constitutional privileges were clearly established, a government actor may still be shielded by qualified immunity "if it was objectively reasonable for the public official to believe that his acts did not violate those rights." *Kaminsky v. Rosenblum*, 929 F.2d 922, 925 (2d Cir. 1991).

**B.    Analysis**

In the instant case, the right at issue is not a prisoner's First Amendment right to pursue grievances on behalf of other inmates in his capacity a member of the ILC, which the Second Circuit recognized in 2015. *See Dolan v. Connolly*, 794 F.3d 290,

295 (2d Cir. 2015) ("[W]e now hold that retaliation against a prisoner for filing or voicing grievances on behalf of a prison population as a member of an inmate grievance body, such as the ILC, 'violates the right to petition government for the redress of grievances guaranteed by the First and Fourteenth Amendments.'") (citation omitted). Instead, the issue is whether, at the time of defendants' challenged conduct, precedent from the Supreme Court or the Second Circuit put prison officials on notice that they could not punish an inmate representative on the ILC for violating a facility policy, established based on safety and security concerns, that forbid submission of an unapproved ILC agenda directly to the facility administration.  *See Bacon v. Phelps*, 961 F.3d 533, 545 (2d Cir. 2020) ("The Supreme Court repeatedly has instructed that courts must not define clearly established law at 'a high level of generality.'") (citing, inter alia, *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011)).

It was clearly established at the time of the alleged violation that some actions taken by an ILC member constitute constitutionally protected conduct.  *See, e.g.*, *Dolan v. Connolly*, 794 F.3d at 295; *Webster v. Fischer*, 694 F. Supp. 2d 163, 183 ("voic[ing] criticisms regarding prison conditions" as an ILC member is a clearly established constitutional right).  However, it was not clear from Supreme Court or Second Circuit authority whether the circulation of an ILC agenda, in contravention of a known prison policy requiring that the document first be approved by the ILC staff advisor, was constitutionally protected.  Therefore, the prison officials at Washington C.F. were not put on notice that punishing plaintiff for his conduct violated his constitutional rights.

15

*Cf. Bacon v. Phelps*, 961 F.3d at 545.[6]

A grant of qualified immunity to the named defendants is further warranted by the fact that they were applying a facility policy, and that it was the prison Superintendent who ultimately determined what sanction would be imposed upon plaintiff for his violation of that policy. "When officials follow an established prison policy . . . their entitlement to qualified immunity depends on whether a reasonable officer might have believed that the challenged order was lawful in light of legitimate penological interests supporting the directive." *Barnes v. Furman*, 629 F. App'x 52, 57 (2d Cir. 2015) (quotation marks omitted). To this end, it is well settled that prison safety and security are legitimate penological interests. *Smith v. Artus*, No. 9:07-CV-1150 (NAM/ATB), 2015 WL 9413128, at *10 (N.D.N.Y. Dec. 22, 2015). As discussed above, the policy in question was established based on safety and security concerns triggered by a former ILC member's abuses relating to the circulation of an unapproved agenda. Based on the record in this case, a reasonable fact finder would necessarily conclude that it was objectively reasonable for the two named defendants to believe that they were not violating plaintiff's First Amendment rights by enforcing the facility

---

[6] The Second Circuit in *Bacon* demonstrated that the determination of whether a right is well-established must be examined at a level of specificity tailored to the issue in the particular case:

> In this case, the right at issue is not the general proposition that a prisoner has a First Amendment right to send mail and cannot be punished for its contents. . . . Instead, the issue is whether, at the time Bacon sent a letter to a third party expressing his desire for a woman later identified as a female correctional officer, precedent from the Supreme Court or this court put prison officials on notice that they could not punish him for his statements in that correspondence. It did not. The right therefore was not "clearly established" and the defendants hence are entitled to qualified immunity.

*Id*. (citations omitted).

policy relating to ILC agendas.[7]

**WHEREFORE**, based on the findings above, it is

**RECOMMENDED**, that defendants' motion for summary judgment (Dkt. No. 25) be **GRANTED**, and the sole remaining retaliation claim in plaintiff's complaint be **DISMISSED**.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen (14) days within which to file written objections to the foregoing report. These objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE**

---

[7] The court acknowledges that the Second Circuit has cast some doubt about the applicability of qualified immunity to First Amendment retaliation claims when the defense is based on whether it was objectively reasonable for a defendant to believe that his actions did not violate clearly established law. *See Washington v. Gonyea*, 538 F. App'x 23, 27 (2d Cir. 2013). The Second Circuit reasoned that retaliation claims explicitly require an improper retaliatory motive on the part of the defendant, and "where a more specific intent is actually an element of the plaintiff's claim as defined by clearly established law, it can never be objectively reasonable for a government official to act with the intent that is prohibited by law." *Id.* (quoting *Locurto v. Safir*, 264 F.3d 154, 169 (2d Cir. 2001)) ("A plaintiff need only show particularized evidence of direct or circumstantial facts supporting his claim of unconstitutional motive in order to survive a motion for summary judgment on the defense of qualified immunity.") In finding the defendants are entitled to qualified immunity in this case, this court has relied, primarily, on the conclusion that they did not violate clearly established law, not on the alternative objectively-reasonable-belief prong, to which *Locurto* and its progeny apply. In any event, in this case, unlike in *Locurto* and *Washington v. Gonyea*, there is no dispute of fact that is material to the issue of whether it was objectively reasonable for the named defendants to believe that their conduct did not violate plaintiff's constitutional rights. All of the relevant facts–the existence of the facility policy requiring staff approval for circulation of an ILC calendar, the safety and security concerns that motivated that policy, and the fact that plaintiff violated the established rules and procedures–were not disputed. Whether plaintiff's First Amendment rights were violated turns on whether or not his conduct constituted protected speech, which, in this case, is also a legal issue that does not turn on a disputed issue of fact. If the defendants reasonably believed that plaintiff's conduct was not protected by the First Amendment, their pursuit of disciplinary charges against him could not be the result of an unconstitutional motivation. Because there is no disputed issue of fact material to whether defendants harbored a retaliatory motive, a grant of summary judgment on the objectively-reasonable-belief prong of the qualified immunity defense would also be warranted.

17

**APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing

*Small v. Sec'y of Health & Hum. Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. §

636(b)(1); Fed. R. Civ. P. 72.


Dated: January 30, 2023

Andrew T. Baxter
U.S. Magistrate Judge